**LIVESTOCK FEEDER COMPANY et al.,**
**Appellants,**

v.

**R. W. FEW et al., Appellees.**

**No. 4418.**

Court of Civil Appeals of Texas.
Waco.

Dec. 2, 1965.

Rehearing Denied Dec. 22, 1965.

Griffith & Lumpkins, Waxahachie, for appellants.

Warwick H. Jenkins, Waxahachie, for appellees.

WILSON, Justice.

Plaintiffs sought damages for reduction in market value of land owned by them, and loss of rental value of other land leased by them, arising from defendants' operation of a nearby cattle feed lot, alleged to constitute a nuisance.

It was alleged that cattle excreta drained into and polluted a stream flowing through, and tanks located on, plaintiffs' property, thereby rendering the water unfit for human or animal consumption; that the waste products from thousands of cattle had filtered into the underground water stream which fed plaintiffs' wells and springs, resulting in necessary expenditures to mitigate the damages; that offensive odors and flies were produced. It was alleged these conditions constituted a permanent nuisance, and an injunction was prayed to restrain maintenance of the cattle-feeding operation, or the conducting of it so as to emit odors, attract flies, allow accumulation of fecal matter and refuse, or so as to permit effluent from the latter to pollute plaintiff's water supply.

The jury found in effect that as a result of defendants' operation the water on plaintiffs' land had been polluted, and offensive odors were produced; and that these conditions would continue. It was found that the water pollution constituted a nuisance, but the odors did not. To Issue 7 the jury found defendants' feed pens did not produce flies complained of. To issues 11–15 the jury answered that defendants were not negligent in polluting the water or producing odors. To a general issue the jury answered that "the land of plaintiff, R. W. Few, was damaged as a direct and proximate result of the operation of said cattle feeder pens by defendants," and the damage was temporary, amounting to $750 per year in reduced rental value. The jury made a negative answer to an inquiry as to whether certain other plaintiffs "suffered unreasonable discomfort, annoyance or inconvenience" as a result of the operation of the cattle feeder pens. The sum of $1320 was found to be expense reasonably and necessarily incurred by R. W. Few for fencing and a coffer dam "for the purpose of protecting himself against the condition created by the defendants." A "no" answer was returned to an issue as to whether plaintiffs' "damages" were caused by the cattle of plaintiffs and their neighbors.

Judgment was rendered permanently enjoining defendants from conducting the feeding operation "so as to pollute the waters in, on or under the lands of plaintiffs," and assessing damages to R. W. Few.

Complaint is made of admission over defendants' objection of the testimony of three witnesses that the reputation of plaintiff R. W. Few for truth and veracity was good.

The basis for admission of this evidence appears to be that plaintiff Few had testified on cross-examination that neither he nor his son ever inquired about or asked for a job from defendant for the son. Defendant Emerson, the feedlot manager, testified both plaintiff and his son discussed with him the possibility of a job. Plaintiff concedes that at this point there was no more than contradiction of plaintiff's testimony. He argues, nevertheless, that when defendant's witness, who had assisted in locating a site, testified that on one occasion plaintiff told him he "would like to talk to Mr. Emerson about" a job for his son as manager of the feedlot, the state of the evidence was altered from contradiction to impeachment of plaintiff by a prior inconsistent statement, and evidence of reputation for his truth and veracity became admissible.

The latter testimony was not evidence of a prior inconsistent statement, as plaintiff contends. Such evidence concerns self-contradiction. Testimony that plaintiff had previously stated out of court that he had inquired about, or asked defendant for a job for his son would be an example of such impeachment evidence, if made admissible by the laying of a proper predicate. See

McCormick & Ray, Texas Law of Evidence, Secs. 692, 693. The manager's evidence and that of the other witness was no more than contradictory to that of plaintiff. It went to the question of whether or not plaintiff had actually asked defendant about a job for his son.

"Contradiction between witnesses, in their testimony given upon the trial of a cause," said Justice Brown in Texas & P. Ry. Co. v. Raney, 86 Tex. 363, 25 S.W. 11, 12, "does not authorize the introduction of testimony to sustain the contradicted witness by proof of general character for truth and veracity."

Rejecting authorities from other jurisdictions holding to the contrary, the Supreme Court adopted the rule that where a witness is contradicted by a witness for the opposing party, such conflicts in testimony furnish no ground for admitting evidence of "character for truth and honesty."

■ In Grant v. Pendley, Tex.Com.App., 39 S.W.2d 596, 599, 78 A.L.R. 638, the rule was announced that such evidence was admissible only (1) where the nature of the action involves the character of a party, (2) where a witness has been impeached, or (3) where a party by pleading or evidence charges his adversary with commission of a crime involving moral turpitude. None of these conditions exist here. As said in Jenkins v. Pure Oil Co., Tex.Civ.App., 53 S.W.2d 497, 500, "there was merely a contradiction as to the facts herein referred to", which is not impeachment, "and the contradiction of a witness by other witnesses testifying differently is not such an attack" as authorizes introduction of reputation evidence sustaining character for truth and veracity. See also Fort Worth Hotel Co. v. Waggoman, Tex.Civ.App., 126 S.W. 2d 578, 588, writ dism. c. j.; Shell Pipe Line Corporation v. Coston, Tex.Civ.App., 35 S.W.2d 1056, 1058; Jones-O'Neal Furniture Co. v. Jones, Tex.Civ.App., 269 S.W. 180, 183, writ dism., and cases cited.

■ Whether admission of this evidence is harmless or reversible error may be determined in some measure in the present case, we believe, by the test applied in Grant v. Pendley, Tex.Com.App., 39 S.W.2d 596, 599, 78 A.L.R. 638, as to whether the contradictory testimony by virtue of which it was admitted related to a "material issue" presented to the jury. The contradictory testimony as to the job inquiry or application was evidentiary only on an issue not submitted to the jury in the present case, and was not material to any ultimate issue of recovery or defense. The evidence as to his reputation related to plaintiff's credibility, but under the jury findings and the entire record we think it did not probably cause rendition of an improper judgment. See State v. O'Dowd, 158 Tex. 348, 312 S.W.2d 217, 220.

■ Error is assigned to admission of testimony as being beyond the scope of rebuttal evidence in contravention of Rule 265(i), Texas Rules of Civil Procedure, which provides, in effect, that after parties have introduced their evidence in chief, they shall "be confined to rebutting testimony." The evidence was not improperly admitted under the Rule. Where defendant offers evidence disputing, contradicting or negativing that of plaintiff, the latter may introduce evidence, "notwithstanding it was of the same character as that first introduced by plaintiff, and proper to be introduced in support of the issues made by his own pleadings, * * *." Ayers v. Harris, 77 Tex. 108, 13 S.W. 768, 773; Mayer v. Walker, 82 Tex. 222, 17 S.W. 505; Ochoa v. Winerich Motor Sales Co., 127 Tex. 542, 94 S.W.2d 416.

We have carefully considered each of appellants' twenty points, including those asserting insufficiency of evidence and the failure to balance equities. None reflect reversible error, in our opinion, and all are overruled. Appellees' cross-point is overruled.

Affirmed.